**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Alecko O+G LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:25-CV-12734 |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| Clayton Wilson, *et. al*. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS HR LIQUORS, L.L.C.'S AND HAVANA ROOM CIGARS, L.L.C'S MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS**

Jeanne M. Gills (Attorney No. 6225018)
John F. Zabriskie (Attorney No. 6187887)
Elysia A. Lampert (Attorney No. 6339265)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel: 312-832-4500
Fax: 312-832-4700
Email: jmgills@foley.com
jzabriskie@foley.com
elampert@foley.com

*Attorneys for Defendants HR Liquors, L.L.C. and Havana Room Cigars, L.L.C.*

# TABLE OF CONTENTS


INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

I. Alecko's Principals Purchased Personal Memberships In The Clayton. ............................ 2

II. Alecko Claims The Satchell Creek Defendants Defrauded It By Collecting Fees For Underperforming Oil Wells In Kansas. ................................................................ 3

III. Alecko Attempts To Hold The Clayton Liable Because Clay Allegedly Told Pissios About A "Great Opportunity" While At The Clayton. ................................................ 3

IV. The Complaint Does Not Plausibly Allege That Clay Acted On Behalf Of The Clayton Or That The Clayton Benefitted From The Fraudulent Scheme. ............................................ 4

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT .................................................................................................................. 5

I. Count V Fails To State A Claim For Negligent Supervision. ............................................ 5

A. The Economic Loss Doctrine bars Alecko's negligence claim. .................................... 6

B. The Clayton owed no legal duty to Alecko and did not have a legal duty to supervise personal conversations of its manager/minority owner with members. ......................... 6

C. Clay's actions were not the proximate cause of Alecko's injuries. ................................ 9

II. Count VI Fails To State A Claim For Aiding And Abetting Fraud. ................................. 11

A. The Clayton did not knowingly or substantially assist the fraud. ................................ 11

B. Clay's statements are inactionable puffery and Alecko cannot plead it justifiably relied on such statements. ........................................................................................ 14

III. The License Agreement Precludes Alecko's Claims. ...................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n, Inc.*,
131 Ill. App. 3d 225 (1985) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......... 5

*Behrens v. Harrah's Illinois Corp.*,
366 Ill. App. 3d 1154 (2006) .......... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......... 5

*Biel v. City of Bridgeview*,
335 Ill. App. 3d 526 (2002) .......... 9

*Bosworth v. Cady*,
72 F.2d 62 (7th Cir. 1934) .......... 12

*Braman v. The CME Grp., Inc.*,
149 F. Supp. 3d 874 (N.D. Ill. 2015).......... 5

*Bunzl Retail Services, LLC v. Mid Atlantic Medical Services, LLC*,
No. 21 C 3761, 2022 WL 294751 (N.D. IL Feb. 1, 2022) .......... 13

*Burke v. Nationstar Mortg., LLC*,
No. 21-CV-1549, 2022 WL 888811 (N.D. Ill. Mar. 25, 2022) .......... 11, 12

*Cement-Lock v. Gas Tech. Inst.*,
618 F. Supp. 2d 856 (N.D. Ill. 2009).......... 12

*Champion Parts, Inc. v. Oppenheimer & Co.*,
878 F.2d 1003 (7th Cir. 1989) .......... 7

*Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*,
250 F.3d 570 (7th Cir. 2001) .......... 14

*Gondeck v. A Clear Title & Escrow Exch., LLC*,
47 F. Supp. 3d 729 (N.D. Ill. 2014).......... 6

*Grabinski v. Forest Pres. Dist. of Cook Cnty.*,
2020 IL App (1st) 191267 .......... 7

*Hanley v. XL Towing & Storage, Inc.*,
No. 21 C2256, 2022 WL 22986894 (N.D. Ill. May 24, 2022) .......... 15

*Harrington v. Chicago Sun-Times, a Div. of Field Enters., Inc.*,
150 Ill. App. 3d 797 (1986) .......... 8, 10

*Herrera v. Di Meo Brothers, Inc.*,
529 F. Supp. 3d 819 (N.D. Ill. 2021).......... 10

*Johnson v. Filler*,
2018 IL App (2d) 170923, ¶ 21 .......... 13

*Jones v. Culver Franchising Sys., Inc.*,
12 F. Supp. 3d 1079 (N.D. Ill. 2013) .......... 3

*Lease Resol. Corp. v. Larney*,
308 Ill. App. 3d 80 (1999) .......... 12

*Martin v. Siciliano*,
No. 22 CV 2344, 2023 WL 3320428 (N.D. Ill. May 9, 2023) .......... 9

*McVeigh v. McGurren*,
117 F.2d 672 (7th Cir. 1940) .......... 12

*Noto v. Shlifka*,
2024 IL App (2d) 240093, ¶ 29 .......... 6, 8

*O'Connor v. Ford Motor Co.*,
567 F. Supp. 3d 915 (N.D. Ill. 2021) .......... 14

*Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*,
No. 02 C 4536, 2003 WL 21267096 (N.D. Ill. June 2, 2003) .......... 9

*Rasgaitis v. Waterstone Fin. Grp., Inc.*,
2013 IL App (2d) 111112, ¶ 53 .......... 6

*Schacht v. Brown*,
711 F.2d 1343 (7th Cir. 1983) .......... 13

*Scott v. Wendy's Props.*, LLC,
No. 20 CV 6829, 2024 WL 1768630 (N.D. Ill. Apr. 24, 2024) .......... 9, 10, 11

*Thompson v. Cnty. of Cook*,
154 Ill. 2d 374 (1993) .......... 10

*Zachman v. Citibank, N.A.*,
183 F. Supp. 3d 922 (N.D. Ill. 2016) .......... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2, 5

## INTRODUCTION

Plaintiff Alecko O+G LLC ("Alecko") asserts federal and state law claims arising out of an allegedly fraudulent investment opportunity in Kansas oil wells. The supposed fraud was orchestrated by defendants *other than* HR Liquors, L.L.C. and Havana Room Cigars, L.L.C. (collectively "The Clayton"), which operate a private members club in Chicago's West Loop.

Alecko's Amended Complaint (Dkt. 43, "Compl.") fails to cure the fatal legal defects in the two claims against The Clayton. Count V (negligent supervision) and Count VI (aiding and abetting fraud) are premised on the far-fetched theory that The Clayton is liable to Alecko because it allegedly was the venue where Defendant Clay Wilson ("Clay"), a minority owner of The Clayton, first mentioned the investment opportunity to Alex Pissios, a principal of Alecko. Both claims fail because the alleged introduction involved a personal pursuit of Clay's that even Alecko alleges was "not directly related to the club and its operations." (Dkt. 43, ¶ 197.) Alecko makes no allegation that The Clayton: i) received any fees or financial benefit from investments in the Kansas oil fields; ii) had actual knowledge of the investment, much less endorsed it (or even that Pissios or Alecko thought that); or iii) in any way knowingly participated in the alleged scheme. Rather, Alecko's claims against The Clayton are tacked on in a transparent attempt to target defendants with perceived deeper pockets.

Alecko's claims should be dismissed in their entirety as a matter of law. **First**, Alecko's negligent supervision claim is barred by the economic loss doctrine. Moreover, even though Alecko's principal personally was a member of The Clayton, The Clayton had no relationship with Alecko and thus owed Alecko no legal duty. Further, The Clayton had no legal duty to supervise Clay's personal investment activities as they were not reasonably foreseeable and unrelated to his role as manager and minority owner of a private members club. In any event, Clay's introduction of the Kansas investment to a member who happened to be an Alecko principal was not the

proximate cause of Alecko's alleged injuries, which arose from later conduct by other Defendants and followed Alecko's own due diligence and independent investment decision.

**Second**, Alecko cannot state a claim for aiding and abetting fraud because Alecko fails to adequately plead that The Clayton knew of and substantially assisted the alleged scheme. Clay's alleged knowledge and participation in that scheme cannot be imputed to The Clayton because that was outside the scope of Clay's role with The Clayton. The newly-alleged "benefit" to The Clayton of its "exclusive status" being "reinforced" not only is illogical—how can exposing members to allegedly fraudulent investments burnish a club's reputation?—but is at best incidental, trivial, and speculative. Further, Clay's boasts of a "great opportunity" in which he and his father were "killing it" is nonactionable puffery that Alecko, a sophisticated investment firm, cannot plausibly allege it justifiably relied on. **Third**, Alecko's claims are barred by the liability disclaimer in the License Agreement governing the membership that Pissios, Alecko's principal, purchased.

If The Clayton can be liable on these allegations, then an avalanche of liability would bear down on every bar, restaurant, and club in Chicago. Counts V and VI against The Clayton should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## FACTUAL BACKGROUND[1]

### I. Alecko's Principals Purchased Personal Memberships In The Clayton.

The Clayton is a private members club in Chicago. (Dkt. 43, Compl. ¶ 13.)[2] Alex Pissios, founder and a principal of Alecko, an investment firm, was already a member of The Clayton by the time of the events at issue. (*Id.*, ¶ 65) There are no allegations that The Clayton was in the investment business or was anything other than a private club that Pissios "purchas[ed]" a membership in. (*Id.*, ¶ 196). The membership Pissios purchased at The Clayton is governed by a

[1] The Complaint's non-conclusory factual allegations are taken as true solely for this Motion.

[2] Defendant Havana Room Cigars, L.L..C owns and operates The Clayton, while Defendant HR Liquors, L.L.C. owns The Clayton's liquor license. (*Id.*, ¶ 35.)

Personal Humidor License Agreement (the "License Agreement") under which Pissios is an authorized user. (Ex. 1, License Agmt., at 5.)[3] The License Agreement provides that the Licensee Group, including Pissios, "assume all risks of personal injury to, or for any damage to or any loss of property of, the Licensee Group, arising out of, occurring during, or relating to their presence within or on the Premises." (*Id*., § 10.)

**II. Alecko Claims The Satchell Creek Defendants Defrauded It By Collecting Fees For Underperforming Oil Wells In Kansas.**

Alecko alleges that the Satchell Creek Defendants defrauded it and other Chicago businessmen into investing millions of dollars in Kansas oil wells that those Defendants knew were underperforming. (Dkt. 43, ¶¶ 1-2.) Alecko attempts to pin liability on The Clayton because its minority owner, Clay, allegedly introduced Pissios to the investment opportunity while at The Clayton. (*Infra*, at 4-5.) However, Alecko's RICO and civil conspiracy claims against the Satchell Creek Defendants are based on a series of events that occurred *after* that alleged introduction. Specifically, Alecko states that the Satchell Creek Defendants had investors pour funds into completing oil wells which the Satchell Creek Defendants knew to be dry, to have only water, or had very little oil based on false and misleading statements in investment materials. (*Id*., ¶¶ 43, 72-83.) Alecko claims the Satchell Creek Defendants extracted various fees for completing non-viable wells. (*Id*., ¶ 4.)

**III. Alecko Attempts To Hold The Clayton Liable Because Clay Allegedly Told Pissios About A "Great Opportunity" While At The Clayton.**

Clay is a minority owner of The Clayton and manages its day-to-day operations. (*Id.*, ¶¶

[3] Although Alecko chose not to attach the License Agreement to the Complaint, the Court may consider it because Alecko alleges its principals' purchase of memberships at The Clayton, including what the principals thought they had "bargained for". (*Id*., ¶ 196.) Indeed, Alecko principals' status as members personally of The Clayton is the linchpin of Alecko's claims against The Clayton and that membership is governed by the License Agreement. *Jones v. Culver Franchising Sys., Inc*., 12 F. Supp. 3d 1079, 1081 (N.D. Ill. 2013) (on a motion to dismiss, courts may consider "documents that are critical to the complaint and referred to in it.") (citation omitted).

13, 35-36.) Alecko alleges that in March 2023, Clay told Pissios at The Clayton that he knew of a "great opportunity" to invest in an oil venture in which he and his father were "killing it". (*Id.*, ¶ 65.) Pissios is a principal of a business that makes multi-million dollar investments, so it is unsurprising that Alecko does not allege it chose to invest based on Clay's alleged substance-free opinion of the opportunity's quality. Instead, Alecko alleges it commenced months of its own due diligence to assess for itself the merits of the investment opportunity. (*Id.*, ¶ 67.)

Alecko also claims that Clay used The Clayton's facilities, e-mail server and knowledge of its members that he gained in the ordinary course to "access" high net worth individuals, who then would be introduced to the fraudulent venture at The Clayton. (*Id.*, ¶¶ 36, 192-94.) Further, Alecko alleges that Clay used his work e-mail address (Clay@theclayton.com) to communicate with Alecko (and other investors). (*Id.*) The Complaint alleges these emails contained material misrepresentations about the Kansas investment but does not specifically identify any, instead only making the conclusory allegation that the emails contained "material and knowing misrepresentations." (*Id.*, ¶¶ 194-96.) Alecko alleges that in return for recruiting an investor, Clay would receive special "finder's fees." (*Id.*, ¶ 38.)

## IV. The Complaint Does Not Plausibly Allege That Clay Acted On Behalf Of The Clayton Or That The Clayton Benefitted From The Fraudulent Scheme.

Nowhere in the Complaint does Alecko allege that Clay was acting at the direction of, on behalf of, or with the knowledge of The Clayton when speaking to Pissios about the Kansas oil fields. (*See generally*, Dkt. 43.) Nor are there any allegations that Pissios, much less Alecko, thought Clay was acting on behalf of The Clayton in connection with the Kansas oil field investment. (*Id.*) Rather, Alecko admits that Clay's activities were "for purposes not directly related to the club and its operations." (*Id.*, ¶ 197.) There are no allegations that The Clayton received a "finder's fees" or other financial benefit. In amending, Alecko only can muster an allegation that The Clayton indirectly benefitted from Clay's overture to Pissios because such

overtures made members feel good about belonging to "a highly exclusive social club." (*Id.*, ¶ 38.)

The Complaint asserts two causes of action against The Clayton. Count V alleges The Clayton negligently breached a duty to supervise Clay Wilson to ensure he was not committing civil wrongs, thereby allowing Clay "to do whatever he pleased within The Clayton…" (*Id.*, ¶¶ 191-199.) Count VI asserts a claim for aiding and abetting fraud, alleging The Clayton "knowingly and substantially assisted in the fraudulent solicitation of funds and other wrongful conduct." (*Id.*, ¶ 203.) Alecko, however, does not allege The Clayton had actual knowledge of the alleged fraud; instead, Alecko merely alleges that Clay's knowledge should be imputed to The Clayton. (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed where it appears the facts alleged fail state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the speculative level - mere labels and conclusions or a formulaic recitation of the elements of a cause of action are insufficient to state a claim. *See Braman v. The CME Grp., Inc.*, 149 F. Supp. 3d 874, 883 (N.D. Ill. 2015) (Blakey, J.).

## ARGUMENT

Alecko's Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) because: **(I)** Alecko fails to state a claim for negligent supervision; **(II)** Alecko fails to state a claim for aiding and abetting fraud; and **(III)** the License Agreement precludes Alecko's claims.

### I. Count V Fails To State A Claim For Negligent Supervision.

"[T]he elements of a negligent supervision claim are that: (1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3)

such negligence proximately caused the plaintiff's injuries." *Noto v. Shlifka*, 2024 IL App (2d) 240093, ¶ 29 (citation omitted). The Court should dismiss Alecko's negligent supervision claim because it seeks recovery of economic losses and thus is barred by the economic loss doctrine. This count also should be dismissed because Alecko fails to allege adequately both that The Clayton had a duty, to Alecko or otherwise, to supervise Clay's activities at issue in the Complaint, and that Clay's actions were the proximate cause of Alecko's injuries.

### A. The Economic Loss Doctrine bars Alecko's negligence claim.

The economic loss doctrine (or *Moorman* doctrine) dictates that a plaintiff cannot recover purely economic losses under negligence, strict liability, and innocent misrepresentation theories. *Rasgaitis v. Waterstone Fin. Grp., Inc.*, 2013 IL App (2d) 111112, ¶ 53; *Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 746 (N.D. Ill. 2014) (economic loss doctrine bars negligence claims seeking recovery of pecuniary losses regardless of whether the parties had a direct contractual relationship). Because Alecko claims only monetary losses due to The Clayton's alleged negligent supervision of Clay, Alecko's claim is barred by the economic loss doctrine. *See, e.g.*, *Rasgaitis,* 2013 IL App (2d) 111112, ¶ 57 (affirming dismissal of negligent supervision claim under the economic loss doctrine because it is the employer's wrongful act rather than employee's wrongful act at issue in such a claim).

### B. The Clayton owed no legal duty to Alecko and did not have a legal duty to supervise personal conversations of its manager/minority owner with members.

Courts consider four factors in answering the question of law of whether to impose a legal duty: "1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Noto*, 2024 IL App (2d) 240093, ¶ 30 (citation omitted). "Foreseeability

is not boundless and does not include everything that might conceivably occur; rather, something is foreseeable only if it is objectively reasonable to expect." (*Id.* at ¶ 31.)

Here, Alecko alleges no facts supporting the existence of a duty The Clayton owed it. It was Pissios, Alecko's principal, who was a member of The Clayton in his personal capacity, not Alecko. (Dkt. 43, ¶ 65) "In determining whether a duty of care exists, the court considers whether there is a relationship between the parties such that a legal obligation is placed upon one party for the other party's benefit." *Grabinski v. Forest Pres. Dist. of Cook Cnty.*, 2020 IL App (1st) 191267, ¶ 14; *Champion Parts, Inc. v. Oppenheimer & Co*., 878 F.2d 1003, 1008 (7th Cir. 1989) ("To state a cause of action in Illinois for negligent failure to supervise, a plaintiff must show that the employer owed some duty to the plaintiff.") Nowhere in the Complaint does Alecko allege that The Clayton had a contractual relationship, business relationship, or any other kind of relationship with Alecko that would support a legal duty owed by The Clayton to Alecko. Indeed, the License Agreement shows that The Clayton has corporate members (Ex. 1 at 3), but Alecko was not one. Thus, Alecko's negligent supervision claim must fail. *See Champion Parts, Inc*., 878 F.2d at 1008 (dismissing negligent supervision claim where employer owed no duty to plaintiff).

Further, Alecko irrationally asks this Court to find that an employer/principal of a club has the legal duty to supervise its employee/agent's personal conversations with its membership about topics unrelated to the club's business or the employee/agent's duties. The Court should decline to impose such a duty as any injury arising from purely personal conversations is not reasonably foreseeable and the burden/consequences of guarding against such injury is impractical.

Here, it was not reasonably foreseeable to The Clayton that Clay would allegedly use his ordinary course interactions with members of The Clayton to pitch them on a personal investment opportunity of which The Clayton had no knowledge and in which it had no interest, or that the opportunity would be fraudulent. Indeed, Alecko concedes even after amending that Clay's actions

were "not directly related to the club and its operations", yet provides no explanation of how Clay's introduction to Alecko of an allegedly fraudulent investment or Alecko's injury were reasonably foreseeable to The Clayton. (Dkt. 43, ¶ 197.) They were not. Alecko's conclusory allegation that The Clayton had a duty to ensure Clay did not commit civil wrongs or potential crimes fails under well-established Illinois law that commission of a serious civil wrong or crime is not generally foreseeable to an employer because an employee is not expected to commit such acts. *See Noto*, 2024 IL App (2d) 240093, ¶ 32. Where Alecko makes no allegation that The Clayton knew or should have known that Clay was using The Clayton's premises or its email to solicit or communicate with investors, especially about fraudulent investments, Clay's actions and Alecko's alleged injury were not reasonably foreseeable to The Clayton. *See Noto*, 2024 IL App (2d) 240093, ¶ 33 (negligent supervision claim failed where employee's commission of sexual assault not reasonably foreseeable); *Harrington v. Chicago Sun-Times, a Div. of Field Enters., Inc.*, 150 Ill. App. 3d 797, 803 (1986) (employee's conduct motivated by personal reasons "too far removed from any reasonably foreseeable conduct of an employee").

The Court should also decline to impose a legal duty where the consequences and magnitude of the burden is wildly impractical. *See, e.g., Behrens v. Harrah's Illinois Corp.*, 366 Ill. App. 3d 1154, 1157 (2006) (declining to impose duty on employer to ensure employees drive home safely because burden on employer would be too great). While Alecko may argue that The Clayton should instruct its agents not to discuss personal topics with patrons, The Clayton has no effective way to police every conversation between its agents and The Clayton's members—and nor do the many bars, restaurants, and clubs in Chicago. Similarly, while Alecko claims Clay used his work email to communicate with investors, it is nonsensical that a club would be obligated to screen in real time its agents' emails for possible "civil wrongs [ ] and potential crimes…" for which the club had no notice. (Dkt. 43, ¶ 197.) The burden on clubs and bars of Alecko's proposed

legal duty is both unreasonable and logistically impractical to implement. Thus, the Court should decline to find that The Clayton had a duty to supervise alleged Clay's personal activities.

### C. Clay's actions were not the proximate cause of Alecko's injuries.

Alecko also fails to plead sufficient facts showing that The Clayton's alleged negligent supervision was a proximate cause of Alecko's injuries. To plead causation, Alecko must show that its injuries proximately resulted from The Clayton's alleged breach of duty. *Martin v. Siciliano*, No. 22 CV 2344, 2023 WL 3320428, at *7 (N.D. Ill. May 9, 2023). Proximate cause encompasses cause in fact and legal cause. *Scott v. Wendy's Props*., LLC, No. 20 CV 6829, 2024 WL 1768630, at *3 (N.D. Ill. Apr. 24, 2024), *aff'd*, 131 F.4th 815 (7th Cir. 2025). Cause in fact refers to "but for" causation – or a cause without which the event would not have occurred. *Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2003 WL 21267096, at *4 (N.D. Ill. June 2, 2003). Legal cause is a question of foreseeability and asks whether the injury is a type which a reasonable person would see as a likely result of his conduct. *Id.* Proximate cause boils down to this question: "[w]as defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct?" *Biel v. City of Bridgeview*, 335 Ill. App. 3d 526, 532–33 (2002).

"Together, cause in fact and legal cause provide the boundary of 'how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm.'" *Scott*, No. 20 CV 6829, 2024 WL 1768630, at *3 (citation omitted). In cases involving intervening causes, Illinois courts draw a distinction between a condition and cause. *Id.* "If a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of injury." *Id.* "Proximate cause is also absent where the independent acts of a third person break the causal connection between the alleged original wrong and the injury.

When that occurs, the intervening independent act itself becomes a proximate or immediate cause." *Thompson v. Cnty. of Cook*, 154 Ill. 2d 374, 383 (1993).

Here, The Clayton's alleged negligent supervision of Clay was not a material and substantial element in bringing about Alecko's claimed injury, nor was Alecko's injury a foreseeable result of The Clayton's alleged negligence. While Clay allegedly introduced Alecko to the investment at The Clayton, it was the events *after* the introduction and *not* involving The Clayton that were the material cause of Alecko's injuries.

Alecko somehow concludes that The Clayton should be liable for the entire chain of events that occurred *after* Clay's initial discussion with Pissios at The Clayton. However, this ignores the many subsequent steps not involving The Clayton in any way that had to happen for Alecko's injuries to occur. Namely, the Satchell Creek Defendants supposedly made numerous false and misleading statements to convince Alecko to invest in the opportunity, commingled and diverted investor funds, and even facilitated a fraudulent demonstration in Kansas to show that the oil wells were viable. (Dkt. 43, ¶¶ 67-143.) And Alecko did due diligence. (*Id.*, ¶ 67, 86.) Alecko itself alleges that its decision to invest in Kansas oil fields was based on these many events occurring *after* the initial introduction at The Clayton in Chicago. (*Id.*, ¶¶ 67-107.) When there is an independent act by a third party intervening between the defendant's negligent conduct and the plaintiff's injury, the independent act is a superseding cause of injury relieving the originally negligent party of liability. *Scott*, No. 20 CV 6829, 2024 WL 1768630, at *3. The alleged first step at The Clayton was thus far removed from these many later, independent, and superseding actions of the Satchell Creek Defendants and Alecko that The Clayton had nothing to do with - each of which broke any causal connection between The Clayton's alleged negligence and Plaintiff's injuries. *See Herrera v. Di Meo Brothers, Inc.*, 529 F. Supp. 3d 819, 832-33 (N.D. Ill. 2021) (claim

against employer for negligent supervision failed where complaint alleged no facts plausibly tying defendants' negligent supervision to the vandalism of plaintiff's vehicle at his workplace).

Further, it was not reasonably foreseeable that Clay would discuss his personal investment vehicles with members of The Clayton; even if it was, there is no way to conclude that it was foreseeable that any such discussion would involve a fraudulent scheme. *See Scott*, No. 20 CV 6829, 2024 WL 1768630, at *4 (even if decision not to staff security guard was negligent, the breach could not be proximate cause of injury because intervening criminal act was not reasonably foreseeable). In short, Alecko has failed to plead sufficient facts showing that The Clayton's conduct was the proximate cause of Alecko's injuries. Count V should be dismissed.

## II. Count VI Fails To State A Claim For Aiding And Abetting Fraud.

To state a claim for aiding and abetting fraud, Alecko must plausibly plead facts satisfying the elements of common law fraud and aiding and abetting. *Burke v. Nationstar Mortg., LLC*, No. 21-CV-1549, 2022 WL 888811, at *14 (N.D. Ill. Mar. 25, 2022). Common law fraud requires: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Id.* For aiding and abetting, Alecko must also allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Id.* Here, Alecko fails to plead facts that The Clayton knowingly and substantially assisted the alleged scheme, or that Clay made a false statement of material fact which Alecko justifiably relied on.

### A. The Clayton did not knowingly or substantially assist the fraud.

Alecko does not (and cannot) plead that The Clayton had actual knowledge of the fraudulent scheme. (*See generally*, Dkt. 43.) This is dispositive, as without knowledge of the

alleged fraudulent scheme, The Clayton cannot have "knowingly" and "substantially" assisted the fraud. *See, e.g., Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016) (dismissing aiding and abetting fraud claim where Citibank did not have actual knowledge of scheme); *Burke*, 2022 WL 888811 at *15 (dismissing aiding and abetting fraud claim where "[w]ithout knowing about the fraud, Nationstar couldn't knowingly and substantially assist the fraud.")

Instead, Alecko alleges that The Clayton was "aware of its role" only "through the conduct of Clay Wilson who serves as an agent of The Clayton…" (Dkt. 43, ¶ 203.) Even if imputed knowledge was sufficient (it is not), Alecko's attempt to impute Clay's knowledge of the alleged fraud to The Clayton fails as a matter of law. "[T]he knowledge of an officer, director, or agent is imputed to the corporation only if the person with knowledge is acting within the scope of his employment at the time and "at least in part with the intent to benefit the corporation." *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 891 (N.D. Ill. 2009) (citation omitted); *see also Lease Resol. Corp. v. Larney*, 308 Ill. App. 3d 80, 86 (1999) ("if the agent's interests are adverse to those of the principal, the agent's knowledge is not imputed to the principal."); *Bosworth v. Cady*, 72 F.2d 62, 65 (7th Cir. 1934) ("when the agent is committing a fraud entirely for his own benefit and not for the principal's benefit, the principal should not have imputed to him knowledge of the agent's acts, for the agent, when committing a fraud solely for his own benefit, is not acting within the scope of his authority"); *McVeigh v. McGurren*, 117 F.2d 672, 678 (7th Cir. 1940) ("A principal will not be held personally liable for his agent's deceit unless he has authorized the deceit or participated in it or has knowingly permitted the agent to commit it.")

Clay's knowledge of the fraudulent scheme cannot be imputed to The Clayton because Alecko does not sufficiently allege that Clay was: i) acting within the scope of his employment or agency, or ii) with the intent to benefit The Clayton when he introduced Pissios to the investment. (*See* Dkt. 43, ¶¶ 201-203.) Alecko itself pleads that Clay's conversation with Pissios at The

Clayton was "for purposes not directly related to the club and its operations." (*Id.*, ¶ 197.)[4] Thus, Alecko's own allegations make clear that Clay was not acting within the scope of his employment or agency. Further, Alecko does not plead that The Clayton received any financial or other tangible benefit from Clay's alleged actions. While Alecko vaguely alleges that Clay mentioning the scheme burnished The Clayton's image of exclusivity, (*id.*, ¶ 38), to the extent that incidental dynamic is anything other than purely speculative, it actually works the other way as a fraudulent scheme unequivocally would hurt The Clayton's reputation for, as Alecko concedes, "trust and discretion". (*Id.*, ¶ 196); *see, e.g., Schacht v. Brown*, 711 F.2d 1343, 1348 (7th Cir. 1983) (prolonging corporation's existence and continued earned income from new customers did not constitute benefit to principal where agent's actions injured corporation). Because Clay's knowledge of the supposed fraud cannot be imputed to The Clayton, The Clayton cannot have been aware of the fraud, much less been aware of substantially assisting it. *See Johnson v. Filler*, 2018 IL App (2d) 170923, ¶ 21 (finding that allegations defendant "should have known" of fraud is insufficient to meet knowledge element for aiding and abetting claim.)

Finally, Alecko has not sufficiently plead that The Clayton "substantially assisted" in the violation. Merely being the passive venue where an introduction occurred or having an email system for its employees does not qualify as substantial assistance. *See id.* (where there are no allegations that defendant actively participated in the alleged tortious activity, defendant did not "substantially assist" fraud by merely conducting business); *Johnson*, 2018 IL App (2d) at ¶ 23 (ordinary course business activities do not qualify as substantial assistance).

[4] Any attempt by Alecko to argue, contrary to its allegations, that Clay's alleged statements were within the scope of Clay's agent/employee relationship or for The Clayton's benefit would be barred by the intracorporate conspiracy doctrine. *Bunzl Retail Services, LLC v. Mid Atlantic Medical Services, LLC*, No. 21 C 3761, 2022 WL 294751 (N.D. IL Feb. 1, 2022) (intracorporate conspiracy doctrine bars a claim for a principal aiding and abetting the fraud of an agent acting on behalf of the principal).

### B. Clay's statements are inactionable puffery and Alecko cannot plead it justifiably relied on such statements.

The aiding and abetting fraud claim against The Clayton also should be dismissed for the independent reason that the statements allegedly made by Clay at The Clayton constitute puffery that cannot support a claim for fraud.

Clay's statements that the investment was a "great opportunity" in which he and his father were "killing it" are not actionable false statements of material fact. Rather, these statements are mere non-actionable puffery, particularly when made to a "high net worth" investment professional like Pissios. "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *O'Connor v. Ford Motor Co*., 567 F. Supp. 3d 915, 962 (N.D. Ill. 2021). "Puffing typically consists of subjective descriptions relating to quality, such as 'high quality,' 'perfect,' and 'best." *Id*. (citation omitted). "Statements of puffery are "so vague as to leave the standards for interpretation open to a number of plausible criteria for judgment," and "not capable of precise measuring," such that a reasonable consumer would not rely on them." *Id*. (citation omitted). Clay's statements that the investment was a "great opportunity" and that he and his father were "killing it" cannot qualify as a false statement of material fact because they are vague, subjective opinions open to a number of "criteria for judgment" and are "not capable of precise measuring."

Alecko also fails to plead that it justifiably relied on Clay's puffery. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc*., 250 F.3d 570, 574 (7th Cir. 2001) (reliance on fraudulent statement must have been justified). Alecko cannot allege that it justifiably relied on Clay's comments in deciding whether to invest in the allegedly fraudulent scheme because they were mere non-factual opinions and Alecko is an investment firm whose entire business is evaluating investment opportunities. *Cozzi Iron & Metal, Inc.* 250 F.3d at 575 (reliance was not reasonable where plaintiff, a sophisticated business, had experience entering into contracts). Any inference that an

investment firm like Alecko treated Clay's superlatives about an oil field investment with "legitimacy" because Clay was a minority owner in a Chicago social members club is implausible in the extreme. (Dkt. 43, ¶ 38.) In any event, Alecko essentially confirms it did not rely on Clay's puffery because it performed its own due diligence on the investment opportunity after Clay's first mention of Kansas oil fields to Pissios. (*Id.*, ¶¶ 67, 86.) Count VI should be dismissed. [5]

**III. The License Agreement Precludes Alecko's Claims.**

Although Alecko appears to allege only economic losses, it also alleges damages to its "property." (*Id.*, ¶ 152.) All such claims against The Clayton fail for the independent reason that they are barred by the terms of the License Agreement. "Illinois law recognizes as part of one's freedom to contract, the validity of exculpatory clauses in many cases as relieving a party of liability for negligence." *Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n, Inc.*, 131 Ill. App. 3d 225, 229 (1985). The License Agreement states the Licensee and Licensee Group, including Pissios, "assume all risks of personal injury to, or for any damage to or any loss of property of, the Licensee Group[6], arising out of, occurring during, or relating to their presence within or on the Premises." (Ex. 1, License Agmt. § 10.) Alecko alleges that The Clayton should be liable to it because its injuries arose through Clay's overture regarding the investment to Pissios, a principal of Alecko, while at The Clayton. Based on Alecko's own allegations then, Section 10 of the License Agreement clearly limits The Clayton's liability for any damages "arising out of, occurring during, or relating to their presence within or on the Premises." As such, Alecko's claims are precluded by the terms of Pissios' membership at The Clayton under the License Agreement.

[5] Because aiding and abetting fraud is derivative of the underlying fraud claim, Alecko's aiding and abetting claim against The Clayton must be dismissed if the fraud claims against Clay are dismissed. *Hanley v. XL Towing & Storage, Inc.*, No. 21 C 2256, 2022 WL 22986894, at *7 (N.D. Ill. May 24, 2022) (where a plaintiff fails to state a claim for fraud, a claim for aiding and abetting must also fail).

[6] The Licensee Group includes all "Users" of a given Humidor, and collectively the Licensee, Users, and Guests make up the "Licensee Group." (Ex. 1, License Agmt., § 2.03.) Pissios is a User and thus part of the Licensee Group. (*Id.*)

Dated: February 18, 2026

Respectfully submitted,

By: /s/ *John F. Zabriskie*
John Zabriskie

Jeanne M. Gills (Attorney No. 6225018)
John F. Zabriskie (Attorney No. 6187887)
Elysia A. Lampert (Attorney No. 6339265)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel: 312-832-4500
Fax: 312-832-4700
Email: jmgills@foley.com
jzabriskie@foley.com
elampert@foley.com

*Attorneys for Defendants HR Liquors, L.L.C. and Havana Room Cigars, L.L.C.*