# EXHIBIT 1

C

THE CLAYTON

# PERSONAL HUMIDOR LICENSE AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned "Transferee" enters into this Personal Humidor License Agreement (this "Agreement") with the undersigned "Transferor" and The Clayton, L.L.C., a Delaware limited liability company with dba of "The Clayton, L.L.C." ("The Clayton"). This Agreement is effective upon, and only upon, the required executions of the "Transferor", the "Transferee", and The Clayton.

When the "Personal Humidor License" ("PHL") is being granted to the original "Licensee" (defined hereinafter), the "Transferor" is The Clayton, and the "Transferee" is the original "Licensee". When the PHL is being transferred by the original (or a prior) "Licensee" to a third party, the "Transferor" is the original (or prior) "Licensee", and the "Transferee" is the third party.

<u>Transferor</u>:

| | |
|---|---|
| Name | Havana Room Cigars, L.L.C. dba "The Clayton, L.L.C." |
| Mailing Address | 212 Canal Street |
| State, City, Zip | Chicago, IL 60606 |
| Daytime Phone | 312-342-5533 (for Clayton Wilson, Managing Member) |
| Email Address | clay@theclayton.com (for Clayton Wilson, Managing Member) |

<u>Transferee</u>:

Name

Mailing Address

State, City, Zip

Daytime Phone

Evening Phone

Email Address

PII

C

THE CLAYTON

The Clayton:

| | |
|---|---|
| Name | Havana Room Cigars, L.L.C. dba "The Clayton, L.L.C." |
| Mailing Address | 212 Canal Street |
| State, City, Zip | Chicago, IL 60606 |
| Daytime Phone | 214-350-5572 (for K. Steven Roberts, Attorney at Law) |
| Email Address | steven@ksroberts.com (for K. Steven Roberts, Attorney at Law) |

The Transferor, Transferee, and The Clayton agree to each and every one of the following terms and conditions:

1. Personal Humidor License. The operations of The Clayton shall be at 212 Canal Street, Chicago, IL 60606, which is leased by The Clayton (the "Premises") from 210 Canal Street, L.L.C., a Delaware limited liability company and affiliate of The Clayton. The "Personal Humidor License" (the "PHL") relates to a specific humidor within the Premises, the location and designation of which will be determined by The Clayton (the "Humidor"). The "Transferor" of the PHL for said Humidor is either The Clayton or the original (or a prior) "Licensee" of the Humidor under a separate agreement. The "Transferee" is the grantee of the PHL.

1.01. Upon execution of this Agreement by the Transferor, Transferee, and The Clayton, and the simultaneous payment in full by the Transferee of the fee for the PHL (the "PHL Fee") and any other amounts specified hereinafter at the times and in the manner specified in this Agreement, The Clayton thereupon grants a PHL to the Transferee, who shall thereupon automatically become the "Licensee" under this Agreement.

1.01.1. Simultaneous with the execution of this Agreement by the Transferee, the Transferee shall remit the PHL Fee to The Clayton by check or wire transfer (in accordance with written wire instructions provided by The Clayton). The PHL Fee shall be belong to The Clayton for use by The Clayton for business purposes, including, but not limited to, the development, construction, administration, and operation of the Premises.

1.01.2. A retail tobacco license has been issued to The Clayton for the Premises.

2. Humidors. The Humidors have limited availability and are assigned on a "first-come, first-served" basis; the assigned Humidor will be numbered and secured for the exclusive use of the registered Users (defined hereinafter) of the Licensee during the term of this Agreement. The room(s) containing the Humidors will be humidity controlled.

C

THE CLAYTON

2.01. If the Transferor is The Clayton, the Transferee, by initials below, has chosen the following type of Humidor:

| Initials | Humidor Type | Size |
|---|---|---|
| ______ | Individual | 12"x12"x18" (Height x Width x Depth) |
| JJK ✓ | Shared | 24"x12"x18" (Height x Width x Depth) |
| ______ | Corporate | 24"x24"x18" (Height x Width x Depth) |

2.02. The quantities and configurations of the "Type" of Humidors may be adjusted, either lower or higher, from time to time, in the sole and absolute discretion of The Clayton, subject to the design and space constraints of the Premises and other relevant factors/concerns.

2.03. For a given Humidor of a Licensee, there shall be a maximum number of users (the "Users"), each of which shall be permitted access to the Premises in accordance with and subject to the provisions of this Agreement and the Policies (defined hereinafter). If the Licensee is an individual, then the Licensee shall automatically be the name of one of the Users; in addition to and/or otherwise, up to the maximum number of permissible Users, the Licensee shall provide and register with, by providing written notice to, The Clayton of the name of the User(s) associated with the Humidor of the Licensee; once confirmed by The Clayton to the Licensee, the User(s) shall be registered with the Humidor of the Licensee.

| Initials | Humidor Type | Users | Name(s) of User(s) |
|---|---|---|---|
| ______ | Individual | ≤ 1 | 1.________________ |
| JJK | Shared | ≤ 2 | 1. PII<br>2. ALEX Pinids |
| ______ | Corporate | ≤ 4 | 1.________________<br>2.________________<br>3.________________<br>4.________________ |

C

THE CLAYTON

Subject to the provisions of this Agreement and the Policies, only the registered Users, and the guest(s) of the Licensee and/or the guest(s) of those Users (each a "Guest", and collectively the "Guests"), shall be permitted access to the Premises. The Licensee, the Users, and the Guest(s) shall constitute the "Licensee Group" of said Licensee.

2.04. If the Transferor of a Humidor is the original (or a prior) Licensee, the original/ prior Licensee, by initials below, has identified the number of the Humidor subject to the PHL which is being transferred:

| Initials | Humidor Number |
|---|---|
| [signature] | ______ |

3. PHL Fee.

3.01. If the Transferor of the PHL under this Agreement is The Clayton, then the entire amount of the PHL Fee will be retained by, and be the consideration to, The Clayton for the PHL; in this situation, depending on the type of Humidor, the PHL Fee for a given Humidor is as follows:

| Humidor Type | PHL Fee |
|---|---|
| Individual | $ 6,500 |
| Shared | $10,000 |
| Corporate | $18,000 |

If the Transferor of the PHL under this Agreement is The Clayton, then prior to the execution of this Agreement by The Clayton, the PHL Fee is subject to modification in amount by The Clayton, in the sole and absolute discretion of The Clayton.

3.02. If the Transferor of the PHL under this Agreement is a prior Licensee, then the right of the prior Transferor to transfer the PHL is not permitted until after the first anniversary of the issuance of the certificate of occupancy for the Premises ("Certificate of Occupancy"); thereafter, with regard to the contemplated transfer of the PHL, the amount of the PHL Fee shall be established between the prior Licensee and the Transferee and is represented below and acknowledged by the initials of the Transferor and the Transferee:

C

THE CLAYTON

PHL Fee $5,000.00 Initials of Prior Licensee [initials]

Initials of Transferee [initials]

If the Transferor of the PHL under this Agreement is a prior Licensee, then the PHL Fee established between the prior Licensee and the Transferee shall be remitted by the Transferee to The Clayton; thereupon, eighty percent (80%) of said PHL Fee remitted to The Clayton by the Transferee will thereafter be remitted to the prior Licensee, and twenty percent (20%) of said PHL Fee will be retained by and be the consideration to The Clayton for the administrative transfer of the PHL.

4. User Fee. In addition to the PHL Fee, except as otherwise provided herein or in the "Policies" (defined hereinafter), for each registered User associated with the Humidor of the Licensee, the Licensee shall pay the then-published monthly rental fee ("User Fee"). For each type of Humidor, the User Fee shall initially be $260 per month. The User Fee shall be due and payable in accordance with the 'Policies", with the first payment by the Licensee to The Clayton due on the later of the full-execution of this Agreement or the issuance of the Certificate of Occupancy. The User Fee is non-refundable, may be subject to local and state taxes, shall be remitted by the Licensee to The Clayton in the manner determined, from time to time, by The Clayton, and is subject to modification in amount by The Clayton, in the sole and absolute discretion of The Clayton, with advance notice of 12 months to Licensee.

5. Amenities and Policies for Licensee Group. The Premises will offer access to amenities including, but not limited to, music, televisions, various games, and furnishings at the Premises ("Amenities"). Rules regarding the rights and obligations of the Licensee Group within or on the Premises and to the Amenities and associated fees, if any, will be set forth in the Policies.

6. Limited Rights of PHL. The rights of the Licensee with regard to the PHL are only as are set forth in this Agreement which are further subject to the Policies. The rights of the Licensee with regard to the PHL are subject to the timely payment by the Licensee of the User Fee and full and complete compliance by the Licensee Group with the provisions of this Agreement and the Policies. Subject to the Policies, the PHL entitles the Licensee Group with access to the Premises and the Amenities during the normal business hours of The Clayton upon presentation of documentation and/or evidence of identity of the Licensee Group which is determined to be sufficient in the sole and absolute discretion of the "Personnel" (defined hereinafter).

7. Term of Agreement and PHL. The term of this Agreement and the PHL shall be perpetual unless terminated by:

7.01. the occurrence of a Default (defined hereinafter);

7.02. the transfer by the Licensee of the PHL to a third party in accordance with the terms and conditions of this Agreement; or

7.03. the permanent cessation of operations of The Clayton.

8. Reservation of Rights by The Clayton. In addition to any rights The Clayton may have at law or under this Agreement, The Clayton hereby reserves the right to pledge, encumber, assign, sell, and/or otherwise transfer The Clayton's rights and interests under this Agreement ("The Clayton Transfer"). Upon reasonable prior notice from The Clayton to the Licensee, the Licensee shall make all payments due hereunder to such assignee/transferee of The Clayton and shall execute and deliver any documents which The Clayton may reasonably request to acknowledge and confirm, upon The Clayton Transfer, that this Agreement will remain in full force and effect, will continue to be a legal, valid, and binding obligation of Licensee enforceable in accordance with the term of this Agreement, and neither the Licensee or, to the knowledge of Licensee, The Clayton is in material breach of this Agreement.

9. Policies. The provisions of this Agreement and the Policies set forth below and separately published and/or distributed from time to time by Clayton and/or the officers, managers, members, employees, representatives, and/or agents of the Clayton (collectively, the "Personnel") exclusively govern the access, rights, and obligations of the Licensee Group within, to, and on the Premises. The Policies may and will be amended, supplemented, and established, from time to time, by and in the sole and absolute discretion of the Personnel. The Licensee bears the sole and complete responsibility to make sure that any User and/or Guest of the Licensee Group of said Licensee are/is familiar with and abide(s) by the Policies. To the extent that the provisions the Agreement and/or of the Policies set forth below conflict with the provisions of the Policies which are separately and later published and/or distributed, from time to time, by the Personnel, the latter provisions of the Policies shall govern the subject matter in question. The Licensee and the Licensee Group respectively understand and agree:

9.01. that the Policies will provide rules of conduct for all licensees, registered users of those licensees, guests of those licensees, and/or guests of those registered users, promote the safety of all persons within/on the Premises, establish the rights of all licensees and registered users to bring guests to the Premises, enhance the experience for all persons within/on of the Premises, and may, therefore, restrict or prohibit, without limitation, unruly or disorderly conduct, possession or use of illegal drugs or controlled substances, sale or distribution of material while within/on the Premises, offensive or obscene language or displays, damage to the facilities or Amenities of the Premises, and possession within or on the Premises, that in the sole and absolute judgment of the Personnel is/are or may be contrary to the best interests of The Clayton and/or others, including, without limitation, of

C

THE CLAYTON

beverages, cameras, food, explosives, paint, recording and transmitting devises, signs and posters, sound devices, weapons, or umbrellas;

9.02. that the Licensee Group and their possessions and belongings may be subject to search by the Personnel to enforce the Policies;

9.03. that observance by the Licensee Group of any and all Policies is the contractual obligation of Licensee;

9.04. that the Licensee Group shall not take any action which would cause any increase in premiums of any insurance policy applicable to the Premises and/or The Clayton or which would cause The Clayton to fail to meet any requirement of such insurance policy; and

9.05. that, without limiting the foregoing, the Licensee specifically agrees that Licensee Group:

9.05.1. will not bring into or on the Premises any illegal drugs, or, except as prescribed by a physician, any controlled substance, or any weapons, explosives, or other items prohibited by the Policies or the Personnel;

9.05.2. will not permit the Humidor to be used for any illegal, improper, immoral, or objectionable purpose; and/or

9.05.3. will not, in any way, obstruct or interfere with the rights of any other licensees.

10. Assumption of Risks, Liability, Indemnity. Licensee and the Licensee Group respectively assume all risks of personal injury to, or for any damage to or any loss of property of, the Licensee Group, arising out of, occurring during, or relating to their presence within or on the Premises. Licensee assumes any and all liability and financial obligation, which shall be satisfied immediately, for any damage to or theft of any property belonging to The Clayton, the Personnel, any other licensees, registered users of those other licensees, or guests of those other licensees, or guests of the registered users of those other licensees, which was caused directly or indirectly by the actions of the Users and/or Guests of said Licensee. Licensee and the Licensee Group respectively acknowledge and understand that alcoholic beverages may be consumed on the Premises and that presence on the Premises may expose the Licensee Group to certain risks of injury including, without limitation, incidences involving other persons who have consumed alcoholic beverages and the unruly behavior of other persons. Licensee and the Licensee Group respectively assume all responsibility and liability for consumption of alcoholic beverages, the conduct, and the behavior of the Licensee Group, arising out of, occurring

C

THE CLAYTON

during, or relating to their presence within or on the Premises. Licensee and the Licensee Group respectively indemnify and hold harmless The Clayton and the Personnel from and against any claims, damages, actions, suits, and expenses, including reasonable attorneys' fees and related expenses arising out of or relating to the consumption of alcohol by the Licensee and/or the Licensee Group and/or the contravention of the Policies by the Licensee and/or the Licensee Group.

11. Disclaimer of Liability. Neither The Clayton, nor the Personnel, shall be liable or responsible for any loss, damage, or injury to the person or property of the Licensee or the Licensee Group within, proximate to, or on the Premises, resulting from any cause whatsoever, including, without limitation, theft and vandalism, unless due to the willful misconduct of the Personnel.

12. Disclaimer of PHL. The PHL does not grant or provide Licensee with any ownership or other equity interest in The Clayton or any ownership in the Premises or the Amenities. The rights licensed under this Agreement are revocable rights of personal privilege and do not confer upon Licensee any interest in real property, personal property, or any leasehold interest in the Humidor to which the PHL applies or to the Premises. Licensee's relation with The Clayton is that of licensee and licensor. The PHL shall not be viewed or acquired as an investment, and Licensee shall not expect to derive any economic profit as the Licensee of the PHL. The PHL and ongoing operations of The Clayton are subject, at all times, to the rules, regulations, and laws of the local and state government authorities which may change at any time.

13. Representations of Licensee. Licensee represents, warrants, and agrees as follows:

13.01. Licensee has read and understands the terms and conditions of this Agreement;

13.02. Licensee is not acquiring the PHL as an investment and has no expectation of profit as the Licensee of the PHL;

13.03. Licensee is not, by the PHL, acquiring any ownership, voting, or equity interest in The Clayton;

13.04. Licensee is acquiring the PHL for Licensee's own use;

13.05. Licensee is acquiring the PHL for the sole reason of accessing the Humidor, the Premises, and the Amenities of The Clayton.

13.06. Licensee acknowledges and agrees that, although the PHL is transferable subject to the terms and conditions of this Agreement, The Clayton has not represented and does not guarantee that there is or ever will be a market for the resale of the PHL;

13.07. Licensee acknowledges and understands that the PHL and ongoing operations of The Clayton are subject, at all times, to the rules, regulations, and laws of the local and state government authorities which may change at any time; and

13.08. Licensee has not relied upon any representations, warranties, or other statements of any kind made by or on behalf of The Clayton or the Personnel, except as expressly set forth in this Agreement.

14. Reservation of Rights by The Clayton. The Clayton reserves the following rights in addition to any rights it might have at law or under the terms of this Agreement:

14.01. the right to limit the number of PHLs licensed to any individual or entity;

14.02. the right to determine whether the character, demeanor, and/or actions of the Licensee and/or the Licensee Group are suitable to for the Licensee to remain as a Licensee;

14.03. the right to pledge, encumber, assign, sell, or otherwise transfer The Clayton's rights and interests hereunder; and

14.04. the right to determine the design, décor, furnishings, Amenities, and all of other features of the Premises.

15. Default by Licensee. In the event that Licensee fails:

15.01. to timely pay any amounts required to be paid by the Licensee, including, but not limited to, the PHL Fee and/or any User Fee;

15.02. to fully and completely observe the Policies and/or rules of The Clayton as determined from time to time by The Clayton; or

15.03. to fully and completely perform or observe any of the duties and/or obligations of Licensee under this Agreement;

then such event shall constitute a default under this Agreement ("Default"). If a Default occurs, The Clayton shall provide written notice to Licensee of such Default, and at The Clayton's sole option, the Licensee shall forfeit the PHL and the PHL Fee previously paid by Licensee, and the Licensee shall remain liable for all losses suffered as a result of such Default. Any monetary obligations which are not timely paid by Licensee, upon written notice to the Licensee, shall bear interest at the annual rate of

fifteen percent (15%) or the highest rate permitted by law, whichever is less; Licensee shall be liable to pay all reasonable attorney's fees and court costs incurred in the collection of any monies owed by the Licensee to The Clayton.

16. Terms and Restrictions on Transfer and Otherwise. The Licensee agrees to the following terms and restrictions relating any transfer of the PHL:

16.01. subject to the terms and conditions in this Agreement, providing written notice with appropriate supporting documentation to The Clayton, and other reasonable terms and restrictions which may be established, at any time and from time-to-time, by The Clayton, the Licensee may transfer the PHL by bequest subject to the entering into a new "Personal Humidor License Agreement" by the party receiving such bequest;

16.02. the Licensee may transfer the PHL to a third party by entering into a new "Personal Humidor License Agreement", in form and content as then determined by The Clayton (the "Transfer Agreement"), as "Transferor", with the third party as the "Transferee", and with The Clayton in accordance with the terms and conditions of the Transfer Agreement; once a Licensee transfers the PHL to a third party in accordance with the Transfer Agreement, the "Transferor" will no longer have any rights associated with the PHL, the Humidor, the Premises, and/or The Clayton;

16.03. there shall be only one licensee of the Humidor at any given time;

16.04. other than as expressly provided in this Agreement, the Licensee may not assign, mortgage, sublease, pledge, encumber, or otherwise transfer the PHL (collectively, "Unauthorized Transfer"); the occurrence of any Unauthorized Transfer shall be void and of no effect; and

16.05. if the "Transferor" is the original first "Licensee" to hold the PHL, then no transfer of the PHL shall be permitted before October 1, 2016.

17. Governing Law, Consent to Jurisdiction. This Agreement shall be construed and enforced in accordance with the laws of the State of Illinois, without regard to the conflicts of laws principles thereof. Licensee, for itself and the Licensee Group, hereby irrevocably and unconditionally:

17.01. consent(s) to submit to the exclusive jurisdiction of the courts of the State of Illinois and of the United States of America located in the Northern District of Illinois (the "Illinois Courts") for any action, suit, or other proceedings brought in connection with or related to this Agreement, including any claim for injuries or damages, and agrees not commence any such action, suit, or other proceeding except in the Illinois Courts;

17.02. waive(s), to the fullest extent permitted by applicable law, any objection which Licensee or the Licensee Group may now or hereafter have to the selection of venue for any such suit, action, proceeding brought in the Illinois Courts or any defense of inconvenient forum for the maintenance of such action;

17.03. agree(s) that a judgment in any action, suit, or other proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law and that the prevailing party in any action, suit, or other proceeding will be entitled, from the other party, to all reasonable attorneys' fees and costs in such action, suit, or other proceeding; and

17.04. **WAIVE(S) ITS/THEIR RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM RELATING TO OR ARISING OUT OF THIS AGREEMENT.**

18. Notices. Any notice or communication given under this Agreement must be in writing and shall be effective only if delivered personally, or sent by confirmed facsimile/email transmission, or delivered by overnight courier service, or sent by certified mail, postage prepaid, return receipt requested, to the recipient at the address set forth on the first page of this Agreement or to such other address as the party being notified may have previously furnished to the other party by written notice in accordance with this section. Notices or communications given under this Agreement shall be effective and deemed received on the date of personal delivery, or the date of facsimile/email transmission as evidenced by the facsimile/email confirmation, or on the day after sending by overnight courier service as evidenced by the signature of the party or representative of party, or on the date of actual delivery to the party to whom such notice or communications was sent by certified mail, postage prepaid, return receipt requested as evidenced by the return receipt signed by the party or the representative of the party.

19. Entire Agreement, Modification. This Agreement and the Policies, which are incorporated by reference and which may be amended and/or supplemented from time to time by the Personnel, contain the entire agreement of the parties with respect to the subject matter of this Agreement and shall supersede any representations or agreements previously made or entered into by the parties to this Agreement. No modification to this Agreement shall be valid or enforceable unless in writing signed by all parties. Licensee agrees to execute any addendum to this Agreement which incorporates reasonable amendments to the terms and conditions of this Agreement.

20. Binding Effect. As of last date of execution of this Agreement, this Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their permitted successors and assigns. The Clayton may assign this Agreement, and The Clayton's rights and obligations hereunder; thereupon, The Clayton shall thereby be released from its obligations hereunder to the extent of such

assignment. This Agreement shall not be binding upon and enforceable against The Clayton until first executed by the Licensee, then executed by The Clayton, and thereupon followed by the delivery of a fully-executed copy of such executed Agreement to the Licensee.

21. No Waiver. No waiver by The Clayton of any default or breach by the Licensee or the Licensee Group of any obligation under this Agreement shall be construed to be a waiver or release of any other subsequent default or breach by the Licensee or the Licensee Group under this Agreement. No failure or delay of The Clayton to exercise any remedy provided in this Agreement shall be construed as a forfeiture or waiver thereof or any other right or remedy available to The Clayton.

22. Damages. In no event whatsoever shall The Clayton be liable to the Licensee or the Licensee Group for damages or other monetary obligations in excess of the PHL Fee paid by Licensee to and retained by The Clayton. Licensee's and the Licensee Group's sole remedy shall be recovery of only that retained portion of the PHL Fee, and the Licensee and/or the Licensee Group shall not be entitled to specific performance or similar remedies.

23. Insurance. The Licensee shall be solely responsible for risk of loss and insuring against loss as to the contents of the Humidor.

24. Authorization. The Clayton represents that the entering into this Agreement has been properly authorized and that the signatory of The Clayton to this Agreement is authorized to bind The Clayton to this Agreement.

25. Proof of Identity. Access to The Clayton and to the Humidor shall require proof of identity of the User, in a form, nature, scope, and manner to be determined by, in the sole and absolute discretion of, The Clayton, including, but not limited to government-issued identification documents and signature specimens that will be kept in the files of The Clayton and the existence of electronic systems and/or mechanical mechanisms designed to restrict and document access to Premises and to the Humidor.

26. PRIVACY. THE CLAYTON SHALL KEEP PRIVATE AND CONFIDENTIAL, AND SHALL NOT DISCLOSE TO ANY THIRD PARTIES, UNLESS SPECIFICALLY PERMITTED OR REQUIRED BY LAW, THE NON-PUBLIC INFORMATION OF THE LICENSEE WHICH IS COLLECTED FROM THE DOCUMENTS PROVIDED BY THE LICENSEE TO THE CLAYTON OR FROM A CONSUMER-REPORTING AGENCY RELATING TO THE LICENSEE. THE LICENSEE AND THE LICENSEE GROUP SHALL KEEP PRIVATE AND CONFIDENTIAL, AND SHALL NOT DISCLOSE TO ANY THIRD PARTIES, ANY AND ALL INFORMATION LEARNED, DISCOVERED, OR OTHERWISE OBTAINED BY LICENSEE OR THE LICENSEE GROUP WITHIN, PROXIMATE TO, OR ON THE PREMISES, WHETHER FROM THE PERSONNEL,

OTHER LICENSEES, OTHER USERS, OR OTHER GUESTS, AS TO THE BUSINESS, OPERATIONS, AND/OR NATURE OF THE CLAYTON AND/OR AS TO THE IDENTITY, ACTIVITIES, AND DISCUSSIONS OF OTHER LICENSEES OR LICENSEE GROUPS. USE OF CAMERAS OR PHOTOGRAPHIC EQUIPMENT BY USERS AND GUESTS WITHIN, PROXIMATE TO, OR ON THE PREMISES IS STRICTLY PROHIBITED.

27. Time of the Essence. Time is of the essence with respect to the performance of the obligations of Licensee and/or the Licensee Group under this Agreement.

C
THE CLAYTON

In witness whereof, as of the later date of execution below, the undersigned parties acknowledge and agree to be legally bound to the terms and conditions of this Agreement.

Transferor

Date of Execution by Transferor:

________________________________ _______________

Clayton Wilson
Managing Member
Havana Room Cigars, L.L.C.

Transferee/Licensee

Date of Execution by Transferee:

PII

_______________

Name:
Title: PII
Entity:

The Clayton, L.L.C.

Date of Execution by The Clayton:

________________________________ _______________

Clayton Wilson
Managing Member

C

THE CLAYTON

# POLICIES OF THE CLAYTON

Each Licensee and its Licensee Group, which includes those Users registered by said Licensee and also includes the guests of said Licensee and/or the guests of those registered Users (each a "Guest, and collectively "Guests"), is/are, at all times, subject to the terms, conditions, and provisions of the Personal Humidor License Agreement, to which the Licensee and Havana Room Cigars, L.L.C. dba The Clayton, L.L.C. ("The Clayton") are parties (the "Agreement"), and the Policies. The defined terms of the Agreement are incorporated by reference.

The provisions of the Agreement and the Policies set forth below and separately published and/or distributed from time to time by the Personnel exclusively govern the access, rights, and obligations of the Licensee Group within, to, and on the Premises. The Policies may and will be amended, supplemented, and established, from time to time, by and in the sole and absolute discretion of the Personnel. The Licensee bears the sole and complete responsibility to make sure that any User and/or Guest of the Licensee Group of said Licensee are/is familiar with and abide(s) by the Policies. To the extent that the provisions the Agreement and/or of the Policies set forth below conflict with the provisions of the Policies which are separately and later published and/or distributed, from time to time, by the Personnel, the latter provisions of the Policies shall govern the subject matter in question. The Licensee and the Licensee Group respectively understand and agree:

- that the Licensee Group and their possessions and belongings may be subject to search by the Personnel to enforce the Policies;
- that observance by the Licensee Group of any and all Policies is the contractual obligation of Licensee;
- that the Licensee Group shall not take any action which would cause any increase in premiums of any insurance policy applicable to the Premises and/or The Clayton or which would cause The Clayton to fail to meet any requirement of such insurance policy; and
- that, without limiting the foregoing, the Licensee specifically agrees that Licensee Group:
    - will not bring into or on the Premises any illegal drugs, or, except as prescribed by a physician, any controlled substance, or any weapons, explosives, or other items prohibited by the Policies or the Personnel;
    - will not permit the Humidor to be used for any illegal, improper, immoral, or objectionable purpose; and/or
    - will not, in any way, obstruct or interfere with the rights of any other licensees.

Guest(s) of User(s)

At any given point in time, within or on the Premises, the number of Guests for each registered User shall be limited to no more than three (3) individuals, each of which must be at least eighteen years of age, without the advance permission otherwise of The Clayton, which permission may be withheld in the sole and absolute discretion of The Clayton. The number of Users and/or Guests, in aggregate, allowed within/or the Premises at any point in time is further subject to the limits of occupancy established by the local governmental authorities. Guests shall only be permitted access to and be allowed to remain within or on the Premises if and only while accompanied by a registered User. While within or on the Premises, Guests shall be required to strictly adhere with all Policies and any further requirements established and imposed by The Clayton from time-to-time. To gain admittance and access to the Premises and the Amenities, which shall only be possible during the normal business hours of The Clayton, Users and Guests shall be required to present documentation and/or evidence of their identity, which is then determined to be sufficient in the sole and absolute discretion of the Personnel, and sign in as required by the Personnel. For any Guest, admittance and access to the Premises and the Amenities maybe limited in duration and frequency by, and in the sole and absolute discretion of, the Personnel.

Assumption of Risks, Liability, and Indemnification

Licensee and the Licensee Group respectively assume all risks of personal injury to, or for any damage to or any loss of property of, the Licensee Group, arising out of, occurring during, or relating to their presence within or on the Premises. Licensee assumes any and all liability and financial obligation, which shall be satisfied immediately, for any damage to or theft of any property belonging to The Clayton, the Personnel, any other licensees, registered users of those other licensees, or guests of those other licensees, or guests of the registered users of those other licensees, which was caused directly or indirectly by the actions of the Users and/or Guests of said Licensee. Licensee and the Licensee Group respectively acknowledge and understand that alcoholic beverages may be consumed on the Premises and that presence on the Premises may expose the Licensee Group to certain risks of injury including, without limitation, incidences involving other persons who have consumed alcoholic beverages and the unruly behavior of other persons. Licensee and the Licensee Group respectively assume all responsibility and liability for consumption of alcoholic beverages, the conduct, and the behavior of the Licensee Group, arising out of, occurring during, or relating to their presence within or on the Premises. Licensee and the Licensee Group respectively indemnify and hold harmless The Clayton and the Personnel from and against any claims, damages, actions, suits, and expenses, including reasonable attorneys' fees and related expenses arising out of or relating to the consumption of alcohol by the

Licensee and/or the Licensee Group and/or the contravention of the Policies by the Licensee and/or the Licensee Group.

## Disclaimer of Liability

Neither The Clayton, nor the Personnel, shall be liable or responsible for any loss, damage, or injury to the person or property of the Licensee or the Licensee Group within, proximate to, or on the Premises, resulting from any cause whatsoever, including, without limitation, theft and vandalism, unless due to the willful misconduct of the Personnel.

## Privacy

The Clayton shall keep private and confidential, and shall not disclose to any third parties, unless specifically permitted or required by law, the non-public information of the Licensee which is collected from the documents provided by the Licensee to The Clayton or from a consumer-reporting agency relating to the Licensee. The Licensee and the Licensee Group shall keep private and confidential, and shall not disclose to any third parties, any and all information learned, discovered, or otherwise obtained by Licensee or the Licensee Group within, proximate to, or on the Premises, whether from the Personnel, other Licensees, other Users, or other Guests, as to the business, operations, and/or nature of The Clayton and/or as to the identity, activities, and discussions of other Licensees or Licensee Groups. Use of cameras or photographic equipment by Users and Guests within, proximate to, or on the Premises is strictly prohibited.

## Payment of User Fees

The Licensee shall be solely responsible for the timely remittance of each required User Fee to The Clayton. Licensee may either:

- place a valid credit card on file with The Clayton and authorize The Clayton to process a charge against such credit card, on/before the first of each month, for 1/12th of each required User Fee; or
- prepay each required User Fee in full but pro-rated for the remaining months of the calendar year in question.

THE CLAYTON

Payment for Services/Goods

Unless prior credit arrangements have been made between Licensee and The Clayton, any purchase of services and/or goods from The Clayton shall be paid for, in full, by the User and/or the Guest simultaneous with the receipt of said services and/or goods from The Clayton. The failure of a User or Guest of a Licensee to timely pay, in full, for the purchase of services and/or goods from The Clayton shall constitute and become an independent financial obligation of the Licensee which must be paid in full by said Licensee to The Clayton. If a Licensee or User shall have a credit card on file with The Clayton, the Licensee and/or User shall maintain the validity of said credit card and immediately notify The Clayton of any change with regard to the credit-card.

Access to the Premises and/or Amenities

The days and hours for access by the Users and/or the Guests to the Premises and the Amenities shall be established, from time to time, in the sole and absolute discretion of the Personnel. Access of the Users and/or Guests to the Premises and/or the Amenities may be restricted, from time to time, by The Clayton to allow for special events to be held within or on the Premises. Each User or Guest shall be appropriately attired and exhibit proper demeanor within or on the Premises. Access to the Premises and/or the Amenities for any User or Guest may be revoked or refused by the Personnel, for any reason whatsoever in the sole and absolute discretion of the Personnel.

General

The Licensee shall immediately notify The Clayton of any change in mailing/email address or contact information of the Licensee or its Licensee Group. Neither a Licensee or its Licensee Group shall have any right whatsoever to use or avail itself of any intellectual property, likeness, name, mark, or address of The Clayton or the Personnel.

The Clayton reserves the right, but shall not have the obligation to, enter into arrangements with other establishments to offer access thereto for the Licensee Group.

Default for Failure to Adhere to Policies

Failure of a Licensee and/or its Licensee Group to strictly adhere to the terms, conditions, and/or provisions of the Agreement and/or to the Policies will be deemed a "Default" by the Licensee under the Agreement.